IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$39,980 in U.S. Currency,<br><br>Defendant in Rem. | No. 3:24-CV- |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $39,980 in U.S. currency ("Defendant Property"):

**NATURE OF THE ACTION**

**1.** This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks the forfeiture of the Defendant Property, because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $39,980 in U.S. currency. The Defendant Property was seized from Cornelius Ferrell at DFW Airport, Texas, on October 28, 2020. On November 3, 2020, it was deposited into a Loomis bank account in Dallas, Texas.

6. Emily Fuller ("Fuller"), a resident of Lancaster, Texas, claimed the Defendant Property on October 19, 2023, and sought judicial referral.

## FACTS

7. The factual basis for the forfeiture in this case involves an investigation by the DEA Dallas Airport Interdiction Group ("DEA Task Force") at DFW Airport ("DFW"). One of the DEA Task Force's responsibilities at DFW is to investigate the use of the airport and the airlines that service the airport to perpetrate or facilitate the illegal transportation of proceeds obtained from criminal conduct including drug trafficking.

8. Those trafficking in illegal narcotics must often find a way to transport the proceeds of their criminal conduct without drawing the attention of law enforcement. Air travel is one mode used by the traffickers or couriers working for or with them to transport such proceeds. The use of air travel allows drug traffickers to keep their ill-gotten gains "off the books" and outside the banking system, which they know is regularly monitored by banking and governmental authorities.

9. Investigators with the DEA Task Force are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

10. On October 27, 2020, DEA Dallas Field Division Enforcement Group 4 received credible information regarding the suspicious travel of Cornelius Quana Ferrell ("Ferrell") who was scheduled to travel from Dallas, Texas to Los Angeles, California on American Airlines flight 2318 scheduled to depart on October 28, 2020 at 5:00pm.

11. On October 28, 2020, at approximately 3:00pm, members of Enforcement Group 4, assisted by DEA Task Force, including Special Agent Kenny Adames, TFO Tanisha Washington, TFO Michael McBride and TFO Garcia, went to the baggage and ticket area at Terminal A at DFW Airport.

12. At approximately 4:00pm, TFO Garcia and TFO McBride observed Ferrell wearing a gray jogging suit and a red face mask. He brought a pink suitcase to a self-service kiosk.

13. TFO Garcia and TFO McBride approached Ferrell and identified themselves by showing their picture identification and badges. TFO Garcia asked Ferrell if they could talk to him and Ferrell agreed and replied yes.

14. Ferrell was asked if he was carrying any drugs, weapons or sharp non metal items and he replied no. Ferrell was asked if he was traveling with large amounts of U.S. currency and he replied no. Ferrell did tell officers he had $3,000 in his pants pocket.

15. After receiving consent to search his person, agents/officers located $3,055.000 on Ferrell's person in his front left pocket.

16. Ferrell told agents/officers he was going to Los Angeles to purchase a vehicle, and had cash with him for that purpose. However, Ferrell was not able to provide agents/officers any information about the vehicle he was purchasing.

17. Initially, Ferrell declined consent for officers/agents to search his suitcase.

18. A certified narcotics odor detection canine, Lulu, who can detect the odors of four controlled substances including marijuana, cocaine, heroin, and methamphetamine, gave a positive alert for the presence of an odor of narcotics during an open-air sniff on the luggage belonging to Ferrell.

19. Ferrell was advised his suitcase was being seized to obtain a search warrant. At that point, Ferrell provided officers/agents consent to search the suitcase.

20. Ferrell unlocked his suitcase for officers to search. Inside, agents/officers located some clothing articles, a pair of tennis shoes, and some dryer sheets around a light blue plastic bag that contained marijuana drug paraphernalia.

21. Agents/officers also located a black backpack inside the suitcase that contained a small red fanny pack containing several bundles of U.S. Currency wrapped in plastic and bound by rubber bands. The black backpack also had several dryer sheets.

22. Additionally, in the suitcase, agents/officers found two empty large vacuum seal plastic bags. The bundled currency and vacuum seal bags are pictured below:



23. Also in the luggage, officers found a copy of a DEA-12 that was provided to Ferrell by the DEA Task force on July 29, 2020, after $69,000 U.S. Currency was seized from him at the DFW airport, pictured below.



24. Following the currency seizure on October 28, 2020, DEA agents/officers reviewed Ferrell's work history on the Texas Workforce Commission and did not find evidence of legitimate employment commensurate with the amount of currency he was carrying.

25. Ferrell has a lengthy criminal history involving the possession of illegal drugs and firearms.

26. The money seized from Ferrell's suitcase totaled $39,980. In the DEA Agents/Officers' experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

## FIRST CAUSE OF ACTION
## 21 U.S.C. § 881(a)(6)
**(forfeiture of property related to drug trafficking)**

1. The United States reasserts all allegations previously made.

2. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

3. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

4. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
## 18 U.S.C. § 981(a)(1)(C)
**(forfeiture related to violation of the Travel Act)**

5. The United States reasserts all allegations previously made.

6. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

7. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

8. 18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

9. 18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

10. As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## **REQUEST FOR RELIEF**

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States receives its costs of court and all further relief to which it is entitled.

DATED this 17th day of January, 2024.

        LEIGHA SIMONTON
        UNITED STATES ATTORNEY

        */s/ Elyse J. Lyons*
        Elyse J. Lyons
        Assistant United States Attorney
        Texas Bar No. 24092735
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone: 214-659-8774
        Facsimile: 214-659-8805
        Elyse.lyons@usdoj.gov

        ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Special Agent with the Drug Enforcement Administration (DEA). As a Special Agent with the DEA, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this  17   day of January 2024.

_____
Special Agent Henry Blackmon
Drug Enforcement Administration